IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO LAND MANAGEMENT, LLC | ) | CASE NO. 4:15 CV 1754 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| | ) | |
| CHESAPEAKE EXPLORATION, | ) | |
| L.L.C., *et al.* | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |

## Introduction

This is a diversity case removed by the defendants from the Columbia County Court of Common Pleas.[1]  The parties have consented to my jurisdiction.[2]

Plaintiff Ohio Land Management LLC claims an interest in the mineral rights in the property at issue in Columbiana County purportedly acquired by a fiduciary deed from the trustee in bankruptcy of the estate of Michael and Amanda Bell.  Defendant Chesapeake Exploration LLC asserts its interest in those mineral rights through an amendment to a lease executed by Michael and Amanda after the filing of their petition for bankruptcy.

Chesapeake had moved to stay this case pending arbitration under the terms of the amended lease.[3]  Ohio Land opposes that motion on the ground that Michael and Amanda

---

[1]ECF #1.

[2]ECF #8.

[3]ECF #5.

had no authority to execute the amendment to the lease after the filing of their petition for bankruptcy.[4]

Because I conclude that the filing of the bankruptcy petition did divest Michael and Amanda of the necessary interest to effectively execute the amendment, I will deny the motion to stay pending arbitration.

## Facts

The parties do not dispute the relevant facts.

As of October of 2010, James and Sandra Bell owned an undivided two-third interest in the property at issue, and Michael Bell owned the remaining undivided one-third interest.

On October 19, 2010, James and Sandra leased their interest to Trinity Land OG Development and Exploration LLC, a predecessor in interest to Chesapeake.  The lease contains a term providing for binding arbitration of any dispute arising under it.  Michael did not join in that lease and retained his undivided one-third interest.

Michael and Amanda Bell filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code on May 15, 2012.  Subsequently, on May 23, 2012, James and Sandra and Michael and Amanda executed an amendment and ratification of October 19, 2010 lease, which purported to transfer Michael's one-third undivided interest in the property to the lessee.  The amendment incorporates the provisions of the original lease.

Thereafter,  on September 4, 2012,  the trustee in bankruptcy, under a Bankruptcy

---

[4]ECF #7.

2

Court order, executed and delivered a fiduciary deed to Ohio Land conveying Michael's undivided one-third interest in the property.

## Issue

The motion to stay presents the following dispositive issue:

> As of May 14, 2012, Michael and Amanda Bell owned a third interest in the property at issue.  On May 15, 2012 the Bells filed a Chapter 7 bankruptcy petition,  On May 23, 2012, they purported to lease their third interest to defendant Chesapeake.  Did the filing of the Chapter 7 petition divest the Bells of their interest in the property, negating the lease of their interest to Chesapeake?

Because I conclude that the Bells could not lease their interest in the property to Chesapeake after the filing of the Chapter 7 petition, the motion to stay proceedings pending arbitration must be denied.

## Analysis

The purported lease amendment, incorporating the original lease between James and Sandra and Chesapeake's predecessor containing the requirement for arbitration, must attach to Michael and Amanda's interest in the property to sustain Chesapeake's right to insist on arbitration here.

Under black-letter bankruptcy law, the bankruptcy estate is created upon the filing of the bankruptcy petition.[5]  By statute, the estate contains, *inter alia*, all "interests" the debtor and the debtor's spouse have in property "as of the commencement of the case" that were

---

[5]11 U.S.C. § 541(a).

3

under their management and control.[6]  Although "all legal and equitable interests in property are included" in the bankruptcy estate by the federal bankruptcy statute, the exact nature and extent of the various specific property interests are matters of state law.[7]

A bankruptcy petition filing transfers to the trustee the rights the debtor posses in the interest at the time of filing,[8] but not the title.[9]  In that regard, after filing the petition the debtor  "holds his title subject to the exercise by the trustee of *his* rights to sell, use or lease such property by appropriation under the 'avoidance' or 'strong arm' sections as typified by Sections 542, 543, 544, 545, 546 and 547 of the 1978 Act as amended."[10]

Here, although Michael and Amanda continued to own title to their share of the property after filing for bankruptcy, that filing transferred to the trustee all rights to sell, use or *lease* the property.[11]  Under Ohio law, which, as noted, controls the "nature and extent" of Michael and Amanda's property holding in this case,  their post-petition attempt to modify the lease connected to the property was without legal authority to do so and the mere

---

[6]*Id*. at § 541(a)(2)(A).

[7]*In re Gunder*, 8 B.R. 390, 392 (Bankr.S.D. Ohio 1980).

[8]*In re Hicks*, 144 B.R. 419, 420 (Bankr.E.D. Ark. 1992)(citing 11 U.S.C. §§ 301, 541).

[9]*Matter of Spain*, 55 B.R. 849, 854 (Bankr.N.D. Ala. 1985); reversed on other grounds, *In re Spain*, 831 F.2d 236 (11th Cir. 1987).

[10]*Id*. (emphasis added).

[11]*See, id*.

4

recording of the lease amendment did nothing to validate Michael and Amanda's action.[12]

Therefore, as the court in *In re Parker*[13] observed:

There is no question that the bankruptcy estate, as transferee of the bundle of rights [the] Debtor enjoyed in [the real property at issue], became the lawful owner of those rights. However, Debtor was nevertheless still in the position to ostensibly convey those same rights [*i.e.*, the rights now properly wholly owned by the trustee] to other parties .... Consequently, it is certainly possible within the abstractions of the law for Debtor to have performed the metaphysical act of transferring to the Defendant something which by operation of the bankruptcy law had ceased to be hers some two months before.[14]

Although the trustee may have had the authority to avoid the purported transfer as contrary to the right of the trustee to solely modify the lease at issue, there is no requirement that he do so, particularly when, as here, the estate received value for the transfer.

Here, the trustee was simply covenanting that he was duly authorized to convey and that the conveyance was done according to proper procedure.  The trustee would have had no reason to investigate whether any lease amendment or ratification had been made or recorded subsequent to the bankruptcy filing.  Or, stated differently, because the conveyance was by fiduciary deed, not warranty deed, with an express "AS IS" and "WHERE IS" provision, the burden would have been wholly on Ohio Land as the buyer to determine if the parties purporting to amend or ratify the lease amendment actually had the legal authority to do so.

---

[12]*See, U.S. v. Josic,* No. 1:05CR582, 2008 WL 5234386, at * 11 (N.D.Ohio,  Dec. 12, 2008)(adopting report and recommendation).

[13]*In re Parker*, 395 B.R.12 (Bankr.W. D. Mich. 2008).

[14]*Id.* at 18, fn. 11.

Accordingly, the conveyance here did not of itself serve to make valid an otherwise invalid lease amendment and ratification, and the property interest received by Ohio Land is not encumbered by any post-petition actions of Michael and Amanda.[15] Rather, the one-third interest transferred by the trustee was exactly what the trustee legally possessed at that moment by operation of law, which was Michael and Amanda's interest in the property precisely at the moment the bankruptcy petition was filed.[16]

Moreover, as Ohio Land states, because an agreement to arbitrate arises as a matter of contract law, a party cannot be bound by such a provision when it has not directly agreed to that requirement nor been made subject to an existing arbitration agreement by becoming the successor in interest to any party contracting for arbitration.[17]  The fact that Ohio Land acquired its one-third interest in the property free from the encumbrance of the lease's requirement of arbitration means that there is no basis for requiring Ohio Land to submit to arbitration in this dispute with Chesapeake.

## Conclusion

Therefore, because Ohio Land acquired its property interest without the encumbrance of the lease involving Chesapeake, Ohio Land has no contractual requirement to arbitrate this

---

[15]11 U.S.C. § 541(a)(1); *Boswell v. Jasperson*, 266 F. Supp. 2d 1314 (C.D. Utah 2003).

[16]11 U.S.C. § 541(a)(1).

[17]*See*, 9 U.S.C. § 2 (FAA covers written provisions in "contracts" involving interstate commerce); *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)(state contract law applies in determining the validity of arbitration clause); *Academy of Medicine of Cincinnati v. AETNA Health, Inc.*, 108 Ohio St. 3d 185, 187 (2006)(contract law determines if a party has agreed to submit to arbitration).

dispute. Accordingly, Chesapeake's motion to stay proceedings and compel arbitration by Ohio Land is denied.

IT IS SO ORDERED

Dated: August 22, 2016                     s/ William H. Baughman, Jr.
                                           United States Magistrate