IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO LAND MANAGEMENT, LLC, | ) | CASE NO. 4:15 CV 1754 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| CHESAPEAKE EXPLORATION, | ) | |
| L.L.C., *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION &** |
| Defendants. | ) | **ORDER** |

## Introduction

I have before me the motion of plaintiff Ohio Land Management, LLC ("OLM") for partial summary judgement[1] and the motion of defendants Chesapeake, L.L.C., *et al.* ("Chesapeake") for summary judgment.[2] The parties have filed response and reply briefs on these motions, and the Court has heard oral argument.

I previously entered a memorandum opinion and order denying Chesapeake's motion to stay pending arbitration.[3] The opinion and order sets out the relevant facts and certain rulings of law relevant to the pending motions. I, therefore, incorporate by reference herein that memorandum opinion and order.

---

[1] ECF No. 27.
[2] ECF No. 29.
[3] ECF No. 12.

## Undisputed Facts

Persons not parties to this suit figure prominently in the underlying dispute. James and Sandra Bell, and their son Michael,[4] owned property in Columbiana County, Ohio as of October 2010. On October 19, 2010, James and Sandra entered into a lease with a predecessor of Chesapeake for their two-thirds interest in the mineral rights of the property. Michael did not join in that lease. On May 15, 2012, Michael and his wife, Amanda, filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Then on May 23, 2015, Michael signed an amended lease with James and Sandra purporting to transfer his one-third interest in the mineral rights to Chesapeake.

The Trustee in bankruptcy, to whom Michael's interest in the property transferred upon the filing of the bankruptcy petition, conveyed Michael's one-third interest to OLM under a fiduciary deed approved by the bankruptcy court.

In 2015, Chesapeake obtained a permit to install a well on the property, placed the well in production, and since has extracted petroleum from the property.

## Issue

Both motions raise the same fundamental issue:

> As of May 14, 2012, Michael owned a third interest in the property at issue. On May 15, 2012, Michael filed a Chapter 7 bankruptcy petition. On September 4, 2013, the bankruptcy trustee conveyed Michael's interest to OLM by fiduciary deed approved by the bankruptcy court. On May 23, 2012, Michael, James, and Sandra

---

[4] There is some question about the extent that Michael's wife, Amanda, is involved in the relevant transactions. For purposes of this decision, that involvement, if any, is not material. Therefore, she will only be referred to as necessary for context.

2

signed an amendment and ratification of the lease to Chesapeake, purporting to convey Michael's third interest in the mineral rights to that company. Does this amendment trump the trustee's conveyance?

As I ruled in my earlier memorandum opinion and order, the answer is "no." Michael could not effectively lease any interest to the property to Chesapeake after the filing of the bankruptcy petition.

## Analysis

The parties have renewed and advanced their arguments about the significance of the amendment and ratification and the trustee's fiduciary deed in the context of the pending motions.

11 U.S.C. § 362(a)(3) provides that a petition for bankruptcy protection "operates as a stay, applicable to all entities, of "any act to . . . exercise control over the property of the estate." This stay must be understood in light of 11 U.S.C. § 541, under which Michael's legal and equitable interests in the real estate here at issue "became the property of the estate *as of the petition date*."[5] This is critical because, as noted previously, at the moment of filing, Michael lost the right to encumber or transfer any property of the estate without the authorization of the bankruptcy court[6] – an authorization he never sought in this case.

Two foundational facts are now established: (1) under § 541, the bankruptcy estate, not Michael, possessed all of Michael's legal and equitable interests in his property

---

[5] *In re Mahendra*, 131 F.3d 750, 755 (8th Cir. 1997) (emphasis added).
[6] *Id.*

effective the moment the petition was filed; and (2) Michael was stayed by operation of § 362(a)(3) from taking any action to exercise control over that property at the moment the petition was filed.

Chesapeake's response to these facts is to admit, in essence, that Michael had no interest in the property at the time he signed the lease amendment, and to tacitly concede the fact that the filing, by statute, stayed his taking any action to exercise control over the property, but then to claim that because the trustee never sought to formally avoid Michael's actions, those actions are ratified, giving effect to the operation of the lease amendment as it concerns OLM.

Both parties point to the Sixth Circuit's decision in *Easley v. Pettibone Michigan Corp.*[7] as providing the basis for deciding what effect should be given to Michael's action in this case. In *Easley*, Carl and Mary Easley filed a product liability suit in state court against Pettibone Michigan Corp. ("Pettibone") after Pettibone had filed for federal bankruptcy protection, an action which on its face violated the automatic stay provisions of 11 U.S.C. § 362(a)(1).[8] The Sixth Circuit began its analysis by observing that – as to actions taken against the debtor in violation of the automatic stay – "invalid" was "a more appropriate adjective to use" because bankruptcy courts retain the power to modify the automatic stay so as to permit actions to proceed against the debtor.[9] *Easley* reasoned that

---

[7] *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir. 1993).
[8] *Id.* at 909.
[9] *Id.* at 909-910 (citing 11 U.S.C. § 362(d)).

4

although the automatic stay remained an important protection for the debtor against collection actions initiated after the bankruptcy filing, in a limited number of cases it would be inequitable to let a debtor use the stay as a shield "where the debtor unreasonably withholds notice [of the stay]" and where an innocent creditor would be prejudiced.[10]

In recognizing this "equitable exception to the operation of the stay," *Easley* emphasized that "unless equity dictates otherwise, these actions [taken in violation of the automatic stay] will be voided by the court in which the invalid action against the debtor was filed."[11] *Easley*'s precise holding, then, was that "only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay as a shield to avoid an unfavorable result, will the protections of the [automatic stay] be unavailable to the debtor."[12]

A more recent Sixth Circuit decision applying *Easley* provides an analytical path to resolution of the present matter. In *Baxter v. Sarmadi*,[13] Deborah Sarmadi – seeking to recover money owed her by Dean Baxter – purchased from a bank a note made by Baxter, which note was secured by one of Baxter's properties.[14] Although Sarmadi informed Baxter that she had purchased the loan and that she wanted to be repaid what he owed her,

---

[10] *Id.* at 910.
[11] *Id.* at 909.
[12] *Id.* at 911.
[13] *Baxter v. Sarmadi*, 602 F. App'x 322 (6th Cir. 2015).
[14] *Id.* at 323.

5

Baxter did not respond to her inquires and made no effort to repay her.[15] Consequently, on May 23, 2013, Sarmadi, through her attorney, foreclosed on Baxter's property, recording the deed on May 29, 2013.[16]

After the sale and the resulting recording of the deed, Sarmadi discovered that Baxter had filed for bankruptcy on May 22 – just one day before the foreclosure.[17] Sarmadi's attorney testified that prior to the foreclosure he had checked the bankruptcy filings for the Middle District of Tennessee, where he believed Baxter lived and where the property was located, but found nothing because Baxter had filed for bankruptcy protection in the Western District.[18] In addition, Baxter produced an email to Sarmadi's attorney – dated May 22, the date of filing – stating that Baxter had filed for bankruptcy protection and that he assumed the foreclosure sale scheduled for the next day would be canceled.[19]

Prior to completion of the bankruptcy proceedings, the Trustee filed a motion to dismiss the proceedings for want of prosecution, and shortly thereafter Sarmadi's counsel moved the bankruptcy court to annul the automatic stay and to ratify the foreclosure sale.[20] Citing "overwhelming evidence" that Baxter had not filed the bankruptcy petition in good

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 324.

faith, the bankruptcy court annulled the automatic stay as to Sarmadi, and ratified the foreclosure sale.[21] Baxter appealed.[22]

In its decision upholding the action of the bankruptcy court, the Sixth Circuit began by noting that the automatic stay was for the benefit of "honest but unfortunate debtors" that the bankruptcy code was enacted to protect.[23] That said, *Baxter* then observed that the bankruptcy code also provides that "'[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying or conditioning such stay,' for reasons that include 'for cause, including the lack of adequate protection of an interest in property of such a party in interest.'"[24]

*Baxter* noted that a debtor's lack of good faith in filing for bankruptcy may constitute "cause" for lifting the automatic stay.[25] Further, the stay may be annulled and invalid post-petition actions ratified upon a finding of "exceptional circumstances" as was detailed in *Easley*.[26]

Here, Chesapeake suggests that its situation is analogous to that of Deborah Sarmadi, and that it is entitled to the same remedy from this Court as Sarmadi received from the bankruptcy court. But, the analogy does not hold up under scrutiny. Most significantly, this Court is not the bankruptcy court that decided Michael Bell's case, and

---

[21] *Id.*
[22] *Id.*
[23] *Id.* (citation omitted).
[24] *Id.* at 324-25 (citation omitted).
[25] *Id.* at 325 (citation omitted).
[26] *Id.* (citation omitted).

7

there never was a motion before that court by Chesapeake to annul the automatic stay and then ratify Michael's invalid post-petition transfer on one of the narrow equitable grounds recognized by either the statute or controlling case authority. Instead, Chesapeake appears to argue that the automatic stay need not be annulled by an express order of the bankruptcy court, but may simply be declared annulled by any court purely because the bankruptcy trustee had never raised an issue as to existence of the stay nor claimed that the invalid act violated the stay.[27]

There is simply no authority for Chesapeake's understanding of how the automatic stay may be annulled and any invalid post-petition action ratified. As the preceding discussion makes clear, the limited power to annul the automatic stay is an equitable power of the bankruptcy court that has jurisdiction over the estate.[28] Moreover, as *Baxter* noted, the bankruptcy court may do so only on a motion by a party in interest and after notice and a hearing.[29]

Therefore, while I accept the general proposition that the automatic stay is subject to being lifted, I find no basis for my authority to actually do so in place of the bankruptcy

---

[27] ECF No. 32 at 6. Although 11 U.S.C. § 549 permits the trustee to avoid a transfer not authorized by the Bankruptcy Code or the bankruptcy court, it does not impose a duty on the trustee to do so or imply that the failure to do so nullifies a transfer made by the trustee with court approval, which the trustee sought and obtained here. As stated in my earlier decision, the trustee received value for the estate in exchange for the deeding of Michael's interest to OLM. Having done so, the trustee had no obligation to spend the estate's limited resources in avoiding Michael's purported transfer to Chesapeake in violation of the automatic stay.
[28] *Baxter*, 602 F. App'x at 324-25 (citations omitted).
[29] *Id.*

8

court. Nor, as is evident in the present record, has there been any notice given to Michael of any claim that his filing for bankruptcy was not in good faith, or that some other basis exists to annul the automatic stay that rendered his post-petition transfer invalid. Moreover, in addition to the lack of any notice, there has been no motion made by Chesapeake as a "party in interest" to the relevant bankruptcy court to request the relief of annulling the automatic stay for any recognizable reason, and so there has been no hearing by that court and no findings made.

Accordingly, Michael's post-petition transfer of a leasehold interest to Chesapeake was invalid under the automatic stay provisions of the bankruptcy code, and nothing subsequent to that invalid transfer has either ratified that act or provided me with a basis for undertaking a *de novo* review of that act and its subsequent effects. Therefore, Chesapeake holds no interest in the property by reason of Michael's invalid act, and the terms of the lease have no effect on any rights claimed by OLM against Chesapeake for actions taken by Chesapeake on Michael one-third interest in the property.

## Further Proceedings

As evident from the statements of counsel at the oral argument on the pending motions,[30] OLM is owed something based on its interest in the property in question for the petroleum products extracted by Chesapeake therefrom. Having now ruled on what OLM's interest is, the case now proceeds to the determination of the amount owed.

---

[30] I strongly recommend that counsel order a copy of the transcript of that argument to assist their discussions going forward. *See* ECF No. 34.

I order counsel to meet and confer in an effort to reach an agreement on that amount. This must take place before November 1, 2018. Counsel must exchange information necessary to meaningfully discuss an agreement no later than seven days before the conference. Counsel must then file a joint report with the Court regarding agreements reached or disputes of material facts remaining for determination by trial on or before November 15, 2018.

I understand that Chesapeake objects to the ruling I have made herein, and any agreement it may reach regarding damages is without prejudice to its right to appeal the ruling.

If a trial is necessary in this case, it will commence on February 4, 2019, with a final pretrial conference on January 28, 2018. Following counsel's report as ordered herein, I will issue a separate trial order if necessary.

## Conclusion

OLM's motion for partial summary judgment is granted in part and denied in part. Chesapeake's motion for summary judgment is denied.

IT IS SO ORDERED.


Dated: September 28, 2018         s/ William H. Baughman, Jr.
                                  United States Magistrate Judge